EMMA MOORE, Administratrix, etc., et al., Complain-
ants-Appellant, v. NORA CARTER et al., Defendants-
Appellees.—277 S. W. (2d) 427.

Middle Section. August 27, 1954.

Petition for Certiorari denied by Supreme Court, March 11, 1955.

Newman Brandon, Jr., of Nashville, for appellant.

Norvel & Minick, Goodpasture, Carpenter & Dale, and Manier, Crouch & White, all of Nashville, for appellees.

HICKERSON, J. The pleadings present a contest between the widow of George Elliott Moore and the heirs at law of Mrs. Annie Cunningham Moore as to the ownership and title of two houses and lots located in Nashville, Tennessee, title to which was vested in George

Elliott Moore at the time of his death. The Chancellor decreed that title to this land was in the defendants who were the heirs at law of Mrs. Annie Cunningham Moore. Mrs. Ottamise Moore, widow of George Elliott Moore, appealed.

Two questions are presented by the assignments, which we shall state affirmatively:

1. The Chancellor erred in holding that the seven defendants, who were the heirs at law of Mrs. Annie Cunningham Moore, the mother of George Elliott Moore, took title to the land which George Elliott Moore owned at his death. The widow of George Elliott Moore contends that the Chancellor should have decreed that title to such land was vested in her upon the death of her husband to the exclusion of defendants, who were his cousins.

2. The Chancellor should have held that the defendants, who were the cousins of George Elliott Moore, were estopped to claim title to the land in controversy because the mother of George Elliott Moore made statements to him which led him to believe that she had devised the lands to him and his wife, complainant, Ottamise Moore, so the survivor would take the absolute title to the land.

The material facts are not in dispute. Mrs. Annie Cunningham Moore was the mother of George Elliott Moore. She predeceased this son. The land in question was devised to George Elliott Moore by his mother by the seventh and nineth paragraphs of her will, which state:

"Seventh. To my aforesaid son, George Elliott Moore, I give the house and lot at 1713 Temple Avenue, Nashville, Tennessee, together with all the furniture and furnishings and chattels thereon and therein. And since this property is worth less than the property given just above to my daughter-in-law, Emma Moore, I supplement this gift to my aforesaid

son of the Temple Avenue property by the gift to him of $3,000.00, in cash, to be paid to him as soon after my death as possible, and to be paid out of the cash that I may have on hand or out of the proceeds of the sale of any bonds or other personal property that I may own.

\* \* \* \* \* \*

"Ninth. To my aforesaid son, George Elliott Moore, I give and devise the building and lot located at 527 Eighth Avenue South, and now leased and occupied by Bond-Sanders Paper Company."

By this will of his mother, George Elliott Moore and his wife, Ottamise Moore, were bequeathed certain personalty by Mrs. Annie Cunningham Moore, as follows:

"Fourth. To Ottamise Moore, wife of my son, George Elliott Moore, I give and bequeath my diamond cluster ring.

"Fifth. To my son, George Elliott Moore, I give and bequeath my diamond ring with two diamonds."

Certain lands and personalty were, also, devised and bequeathed by Mrs. Annie Cunningham Moore to Emma Moore, the widow of a deceased son of Mrs. Annie Cunningham Moore.

Under paragraph eleven of her will, Mrs. Annie Cunningham Moore gave her son, George Elliott Moore, the residue of her estate.

Wherefore, the beneficiaries under the will of Mrs. Annie Cunningham Moore were the widow of her deceased son and her son, who was living, George Elliott Moore. Mrs. Annie Cunningham Moore gave in value about one-third of her estate to Mrs. Emma Moore and about two-thirds of her estate to her son, George Elliott Moore. No mention is made in the will of Mrs. Annie

Cunningham Moore about Ottamise Moore, except in the fourth paragraph of the will quoted above.

George Elliott Moore died suddenly two days after the death of his mother. He had not been sick and had no warning of the fatal heart attack from which he died in two minutes after it struck him. He left no will. He left no children. He left no brother nor sister, nor issue of a brother or sister, surviving him. His father and his mother predeceased him. The two houses and lots in question were acquired by George Elliott Moore through the will of his mother. It is admitted in the bill that, "the first seven named defendants are the next of kin and the only heirs at law of the said deceased, Mrs. Annie Cunningham Moore."

Code Section 8380:

"Land, how inherited by descendants, collaterals, and ascendants.—The land of an intestate owner shall be inherited in the following manner by his lineal descendants, collateral kindred, or ascendants:

\* \* \* \* \* \*

"(3) Where estate came from parent, or ancestor of parent.—Where the land came to the intestate by gift, devise, or descent from a parent, or the ancestor of a parent, and he die without issue—

"(a) By brothers and sisters of the half blood on part of parent from whom estate came, when.—If he have brothers or sisters of the paternal line of the half blood, and brothers or sisters of the maternal line also of the half blood, then the land shall be inherited by such brothers and sisters on the part of the parent from whom the estate came, in the same manner as by brothers and sisters of the whole blood, until the line of such parent is exhausted of the half blood, to the exclusion of the other line.

"(b) By parent from whom or whose ancestors estate came, when.—If he have no brothers or sisters, then it shall be inherited by the parent, if living, from whom or whose ancestors it came, in preference to the other parent.

"(c) By other parent, when.—If the transmitting parent be dead, the other surviving parent shall take.

"(d) By heirs of which parent, when.—If both parents be dead, then by the heirs of the parent from whom or whose ancestor it came."

Code Section 8381:

"The same rules of descent shall be observed in lineal descendants and collaterals, respectively, when the lineal descendants are farther removed from their ancestor than grandchildren, and when the collaterals shall be farther removed than children of brothers and sisters."

Code Section 8382:

"If the intestate died leaving no heirs at law capable of inheriting the real estate, it shall be inherited by the husband or wife in fee simple."

Code Section 7753:

"If the decedent leave no heirs at law capable of inheriting, his widow shall be entitled in fee simple to all the real estate of which her husband died seized and possessed, subject to the payment of the debts of the intestate as in other cases."

■ The "heirs at law" of an intestate are the persons who will inherit his land under the law. Such persons in this jurisdiction are clearly defined in the statutory law of Tennessee. Forrest v. Porch, 100 Tenn. 391, 45 S. W. 676; Spofford v. Rose, 145 Tenn. 583, 237 S. W. 68; Elliott v. Markland, 26 Tenn. App. 222, 170 S. W. (2d) 662.

■ In Forrest v. Porch, the Court was construing a will in which the testator had left his land, "to be divided between my heirs at law." The Court said:

"When the testator directed that the land should be divided among his heirs at law, he meant that the persons falling within that designation should take as 'heirs at law' would take. The phrase, 'heirs at law,' indicates who shall take, and how they shall take. 'Heirs at law' mean the same as 'heirs general.' They are the kindred by blood of a deceased intestate, who inherit his land,—those upon whom the law of descent casts his title. Such persons take the land by operation of that law, and according to it. They and their respective interests are ascertained and defined by the same law. The testator resided in Tennessee, the land devised is located here, and the will is to be construed with reference to our laws."

In Spofford v. Rose, the Court was dealing with the statute which governs the factual situation in the case on trial, Code Section 8380(3) (d), to-wit: "If both parents be dead, then by the heirs of the parent from whom or whose ancestor it came." The Court said [145 Tenn. 583 237 S. W. 70]:

"The statute states that the 'heirs' of Mrs. Spofford shall take—not 'the next of kin.' There is quite a difference. The word 'heirs' designates the persons appointed by law to succeed to the real estate in case of intestacy."

In Elliott v. Markland [26 Tenn. App. 222, 170 S. W. (2) 662], this Court said:

"It is next contended that the husband took the real estate under § 8382 of the Code:

" 'If the intestate died leaving no heirs at law ca-

pable of inheriting the real estate, it shall be inherited by the husband or wife in fee simple'.

''This contention is refuted because (a) Mrs. Markland died testate and (b) left heirs-at-law who would have taken her property in case of intestacy. It is argued, however, that 'heirs-at-law' as used here mean children or issue. No such limited meaning can be given this section, which was intended to cover the case of an intestate who left no heir-at-law, i. e., kindred capable of inheriting the real estate.''

■ The Chancellor correctly held that the heirs at law of George Elliott Moore at the time of his death were the heirs at law of his mother under Code Section 8380(3)(d) ; and that the heirs at law of his mother at the time of her death and at the time of the death of George Elliott Moore were the seven defendants in this cause. (2) Mrs. Ottamise Moore bases her contention relating to estoppel upon her own testimony concerning statements made to her and George Elliott Moore by Mrs. Annie Cunningham Moore after Mrs. Annie Cunningham Moore had executed her will:

''Q. Would she talk to you about it, after she had executed the will, tell you what she had done? A. Yes sir.

''Q. Talked to you— A. Talked to George and me.

''Q. Talked to you and George? A. Yes, sir.

\* \* \* \* \* \*

''Q. What did she say she had done in the will? A. She said she had left one third to Emma and two-thirds to George and me, she wanted Emma taken care of, left two thirds to George and me, she felt like since there was only three of us she should leave

Emma one third and two thirds to George and me, would be fair.

\* \* \* \* \* \*

"Q. Did she say anything at all about what would happen in the event of the death of either of you? A. Whichever one died first the other would get all of it.

"Q. You believed that was true? A. I did.

\* \* \* \* \* \*

"Q. Did George? A. Yes, sir, I am sure he did."

The rules relating to equitable estoppel are stated in Rogers v. Colville, 145 Tenn. 650, 238 S. W. 80, 83:

"Estoppels are not favored in the law. Indeed, it has been said that they are odious. Russell v. Colyar, 4 Heisk. [154] 193; Hume v. Commercial Bank, 9 Lea, 728. This is for the reason that estoppel precludes a party from asserting the truth or enforcing a right which he is otherwise entitled to, and, therefore, unless by his conduct another's rights have been prejudiced, the principle will not be applied.

"Estoppel is a branch of the law of evidence and has its foundation in fraud, considered in its most general sense, not that it is necessary that there be intentional fraud, but the person estopped is considered by his admissions, declarations, or conduct to have misled another to his prejudice, so that it would work a fraud to allow the true state of facts to be proven. Bigelow on Estoppel, 437; 10 R. C. L., 691.

"In Taylor v. [Nashville & C.] Railroad Co., 86 Tenn. 228, 6 S. W. 393, this court approved of Mr. Bigelow's definition of estoppel wherein he sums up the requisites as: First, There must have been a representation or a concealment of material facts; sec-

ond, the representation must have been made with knowledge; third, the party to whom it was made must have been ignorant of the truth of the matter; fourth, it must have been made with the intention that the other party should act upon it; and, fifth, the other party must have been induced to act upon it. Decherd v. Blanton, 3 Sneed, 373.

"We are unable to find fault, as did the Court of Civil Appeals, with the statement of the rule found in 21 C. J., 1135, as follows:

" 'In order to create an estoppel, the party pleading it must have been misled to his injury; that is, he must have suffered a loss of a substantial character, or have been induced to alter his position for the worse in some material respect. As otherwise expressed, where no available right is parted with and no injury suffered, there can be no estoppel in pais. And a fortiori, an act clearly beneficial to the persons setting up the estoppel, cannot be relied on. In the absence of injury, it is, of course immaterial that the other elements of estoppel are present.' "

Mrs. Ottamise Moore claims through her husband. She is in privity with him. For her to successfully claim the benefits of the doctrine of estoppel in this case, the proof must show that her husband could have maintained a plea of estoppel against his mother or the privies of his mother; that is, her heirs at law. We think several elements of estoppel are lacking here:

(a) Mrs. Annie Cunningham Moore did not intend for her statement to George Elliott Moore to prevent his executing a will.

(b) She did not know, nor suspect, that her statements would prevent his making a will.

614

(c)  There is no proof that George Elliott Moore failed to make a will because of the statements which his mother made to him.

(d)  George Elliott Moore was not injured by the failure of his mother to make a will so he and his wife would take title to the land in question with the right of survivorship. To the contrary, the vesting of the absolute estate in the land in George Elliott Moore rather than the vesting of title to such land in him and his wife as tenants by the entireties, as his wife contends should have been done, was actually beneficial to George Elliott Moore.

██ ██  Since George Elliott Mooore suffered no loss or injury by the failure of his mother to devise the realty in question to him and his wife so they would take title to same as tenants by the entireties rather than have the fee simple title devised to him which was done, George Elliott Moore could not maintain a plea of estoppel if all other elements necessary to support the plea were pleaded and proved. Estoppel never applies unless the person relying thereon suffers injury because of the facts relied upon to constitute the estoppel. Rogers v. Colville, supra.

To set up the estoppel for which Ottamise Moore contends, we would have to assume that George Elliott Moore would have made a will if his mother had not made these statements to him, and that he would have made his wife the sole beneficiary of the lands in question under such will. There is no proof of these facts. We think it is more reasonable to assume that George Elliott Moore was just careless about the making of his will and put the matter off until a more convenient season, which never came. Had he lived several years after the death of his mother, he might have made a will making his wife the sole beneficiary; but even that is conjecture.

There is no error in the decree of the Chancery Court, so it is in all things affirmed. Tax the costs of the appeal against Mrs. Ottamise Moore and the National Surety Corporation of New York, the surety on her appeal bond. The costs in the Chancery Court will be decreed by the Chancellor when the cause is concluded in that Court. Remand to enforce the decree and for such other and further proceedings as may seem proper to the Chancellor.

Felts and Howell., JJ., concur.