BEDFORD COUNTY HOSPITAL et al. v. COUNTY OF BEDFORD et al.—304 S. W. (2d) 697.

Middle Section. May 17, 1957.

Petition for Certiorari denied by Supreme Court August 19, 1957.

570

572

574

Cooper & Cooper, Ben Kingree, Jr., James C. Burns, Jr., Allen Shoffner, Shelbyville, Bass, Berry & Sims, Nashville, for appellants.

L. S. Haughland, Shelbyville, Hoyte E. Adams, Jr., Shelbyville, Stephenson, Lackey & Holman, Nashville, for appellees.

HICKERSON, J. A charter of incorporation was issued to nine citizens of Bedford County, Tennessee, on November 8, 1922, under the corporate name of Bedford County Hospital. The corporation was organized under 1932 Code Section 4146 et seq., T. C. A. secs. 48-1101 et seq., which statutes are commonly referred to as "the general welfare and not for profit" statutes.

As the name implies, Bedford County Hospital was organized for the purpose of operating a hospital in Bedford County, Tennessee.

Purporting to act for Bedford County Hospital in an official capacity, Mac Farrar, Chairman, and Charlie Rice, Secretary, executed a deed from Bedford County Hospital to Bedford County on September 19, 1952, and delivered same to the grantee and it was recorded. By this deed, all the assets of Bedford County Hospital were transferred to Bedford County. The hospital was operated successfully for about thirty years.

The bill was filed for decree: (1) that the actions of the purported board of directors elected November 19, 1948, were illegal, null, and void because these directors were not legally elected by the members entitled to vote and were not qualified to act if they had been legally elected; (2) that title to all property sought to be conveyed by the deed dated September 19, 1952, be decreed to be in

Bedford County Hospital; (3) that the deed in question be cancelled as a cloud upon the title to Bedford County Hospital; and (4) that defendants be enjoined from further prosecuting a replevin suit which they had instituted to recover part of the personalty in question.

Defendants answered the bill and denied that the deed was void for any reason, but averred that it was in all respects legal and valid.

By cross bill defendants sought a decree that the deed was valid and operated to convey title to all its assets of every kind from Bedford County Hospital to Bedford County. The cross bill was filed as a declaratory judgment suit.

By answer to the cross bill, complainants set out the same facts, in substance, somewhat more in detail, that they had alleged in the original bill, as amended, as a defense to the cross bill.

■ There are 218 pages of the pleadings, opinions of the Chancellors and decrees. We shall consider the questions which we think are determinative. Persons who bought stock in Bedford County Hospital will be referred to as members, since this is a welfare corporation. These members hold in the nature of stockholders in a private corporation.

Chancellor R. E. Lee wrote an opinion which appears in the record in which he sustained complainants' bill. Before a decree could be entered on this opinion, Chancellor Lee became ill and died from his illness without returning to the Chancery Bench and without entering the decree based on his opinion.

Chief Justice A. B. Neil designated Retired Judge R. W. Smartt to serve during the illness of Chancellor Lee. One case which came before Special Chancellor R. W. Smartt, thus designated, was the case on trial. Judge Smartt tried this case and reviewed the entire record de novo and wrote his own findings of fact, refusing to be bound by the opinion of Chancellor Lee. Judge Smartt decided the issues in favor of defendants and cross complainants and decreed accordingly. To review that decree complainants have appealed to this Court.

We shall state below, under Arabic numerals, the questions which we think are determinative of the controversy presented by the record before this Court; and then consider and respond to such questions of law and fact.

(1) Could the bill be prosecuted by complainants named therein?

The bill is filed in the name of Bedford County Hospital, certain members of the board of directors in their official capacity and as constituent members with other such members of Bedford County Hospital.

Defendants contend that the case should have been brought in the nature of quo warranto in the name of the state by the District Attorney General. 1932 Code Sections 9336-9358, T. C. A. secs. 23-2801 to 23-2821.

In their amended cross bill, defendants state:

"The charges made in the original bill, and otherwise made by the complainants, have placed a cloud upon the title to the real estate and personal property described and referred to, and said defendant,

Bedford County, is entitled to have said cloud thus cast or placed upon its title removed.

\* \* \* \* \* \*

"*While it is doubtful that complainants have any interest in the properties described and referred to in the original bill that entitles them to maintain this suit defendants have not raised or challenged their right to maintain this suit; however, they are advised that the right of the parties to maintain said suit should be made clear;* and, since a cloud has been placed upon the title to the properties belonging to defendant, Bedford County, it is advised that it has the right to maintain its cross bill, as if filed under the Declaratory Judgment Statutes of the State of Tennessee, to the end that the court may declare and settle the question of the title to said property; and it will accordingly pray that this cross bill be deemed and treated as being filed under the Declaratory Judgment Statutes." (Emphasis added.)

Under this amendment to the cross bill, defendants prayed:

"That the cross bill be deemed and treated as a cross bill filed under the Declaratory Judgment Statutes of the State of Tennessee and that the court declare the rights of the defendant, Bedford County, in and to the real estate and personal property involved in this cause; and declare its title thereto to be good and valid in all respects."

578

■ It was the duty of the Chancery Court to enter the decree which justice and equity required. 1932 Code Section 10405, T. C. A. sec. 21-1201.

Relief may be granted complainants under allegations in an answer. Gibson's Suits in Chancery, Fifth Edition, Section 600.

■ In a declaratory judgment suit, relief will be granted defendant when complainant is denied relief; and justice requires that a decree be entered in favor of defendant. In the case on trial relief will be granted the original complaints (cross defendants) on the declaratory judgment suit brought in by cross bill by the original defendants (cross complainants), if complainants who are defendants to the cross suit are entitled to such relief. Frazier v. City of Chattanooga, 156 Tenn. 346, 1 S. W. (2d) 786.

Additional and complete relief will be granted in a declaratory judgment suit after the rights of the parties have been declared upon application of either party. T. C. A. sec. 23-1110.

■ Furthermore, the declaratory judgment law must be liberally construed to effect its purpose, that is, to finally decree the rights of the parties and give them the relief to which they are entitled. T. C. A. sec. 23-1113.

■ Complainants were entitled to the relief sought as defendants to cross complainants' cross bill. In fact, complainants and defendants were fundamentally seeking the same relief; that is, complainants wanted the deed declared invalid and defendants affirmatively prayed for the same deed to be declared valid.

(2) Did Judge R. W. Smartt have jurisdiction to try the cause and enter the decree which he did enter?

The principle objections urged by complainants to the jurisdiction of Judge Smartt are: (1) Judge Smartt should have been bound by the opinion of Chancellor Lee, and should have entered a decree thereon; and (2) the time had expired within which Judge Smartt could have entered a decree in the cause.

We here quote the statutes which may have some application:

T. C. A. sec. 17-216. ''When any chancellor, circuit or criminal judge shall, for any reason, be unable to try the docket in any court of his division or circuit, he shall certify to the chief justice of the Supreme Court the fact of his inability with a request that the chief justice shall assign some other chancellor, circuit or criminal judge to hear the case or cases which he is unable to hear and decide. It shall be the duty of the chief justice of the Supreme Court to designate some other chancellor, circuit or criminal judge who is not or will not be engaged in hearing causes in his own division or circuit to repair to the place where the case or cases above mentioned are to be heard and hear and decide the same in all respects as if he were the duly elected judge of said division or circuit. It shall be no objection to the authority of such assigned chancellor or judge that the regular chancellor or judge is engaged in the hearing of causes in the same or another county of the same division or circuit.''

T. C. A. sec. 17-222. ''When any of the judges of the circuit courts, criminal courts, other special

courts, or county courts, or either of the chancellors, is unable, from sickness or other physical disability, or on account of being ordered into the military or naval service of the United States, to attend and hold any of the courts at the time and place required by law, such judge or chancellor,· or, in case of his inability to do so, the clerk of the court, shall certify the facts to the governor, who shall commission some competent lawyer to attend and hold said courts, for and during the·absence of any of such judges.''

T. C. A. sec. 17-223. ''The person so commissioned shall have all the power and authority of the regular judge or chancellor in whose place he is appointed, and shall continue to hold the courts and exercise the duties of the office until notified by the regular officer that he is in a condition to resume his functions.''

T. C. A. sec. 17-309. ''The chief justice of the Supreme Court of Tennessee is empowered to assign judges who are now retired or who may be hereafter retired, (1) to hold any court in the state, whenever in his judgment it is necessary so to do in order to relieve congested dockets, or (2) to sit for judges who are incapacitated or who may be absent because of sickness or otherwise.''

T. C. A. sec. 17-116. ''Whenever any trial judge shall vacate his office for any cause whatsoever other than the death or permanent insanity of such judge, he shall have and retain, as to cases pending before him, the trial of which has begun prior to his vacation of office, all the powers in connection with said cases which he might have exercised therein, had

such vacation of office not occurred, provided that his powers in this respect shall not extend beyond sixty (60) days from said date of such vacation of office. Such powers shall especially include, but shall not be limited to, the right to render judgments, to hear and determine motions for new trial, to grant appeals and to approve bills of exceptions. Such powers may be exercised by such judge either within or without the geographical limits theretofore assigned by law to such judge.''

■ First, the opinion of Chancellor Lee had no legal force and effect until it was implemented by a decree. Fraker v. Brazelton, 80 Tenn. 278, 280; Gilpin v. Burrage, 188 Tenn. 80, 216 S. W. (2d) 732; Gibson's Suits in Chancery, Fifth Edition, Section 614.

■ Second, it is insisted that Judge Smartt must enter his decree within sixty days after the death of Chancellor Lee; or within sixty days of the induction into office of Chancellor Bigham as successor to Chancellor Lee.

There is no merit in this contention for two reasons: First, Judge Smartt did not ''vacate'' his office so as to come within the statute. He held jurisdiction of the case on trial from the time he took jurisdiction of it until he entered the decree. Second, Judge Smartt had a right to take the case under advisement and hold it until he had prepared his opinion on the case and then enter the decree. Trapp v. McCormick, 175 Tenn. 1, 130 S. W. (2d) 122; Gibson's Suits in Chancery, Section 553, Note 17; Walsh v. Rose, 29 Tenn. App. 78, 193 S. W. (2d) 118.

■ If T. C. A. sec. 17-116 does apply, and we hold it does not; still, the sixty days' limitation would be merely

582

directory. It seems this is the only construction which could be reasonably placed upon the statute. A Chancellor might hear a case with fifty volumes of the record. It might take more than sixty days to prepare the opinion. Surely the statute should not be construed so as to require the case to be put on the trial docket just like it had never been tried and have the case heard again from the beginning. Judge Smartt properly took jurisdiction of the case and properly held it.

(3) Was the board of directors legally elected on November 19, 1948; and were the members of the board qualified to serve?

The general welfare statute under which Bedford County Hospital was chartered provides:

Code Section 4151 (T. C. A. sec. 48-1114). "In all elections each member to be entitled to one (1) vote, either in person or by proxy, and the result to be determined by a majority of the votes cast. Due notice of any election must be given by advertisement in a newspaper, personal notice to the members, or a day stated on the minutes of the board one (1) month preceding the election."

The charter of Bedford County Hospital provides:

"In all elections, each member not in arrears on payments and subscribing or having subscribed $100.00 to this corporation shall be entitled to one vote for each one hundred dollars subscribed and all persons subscribing a fractional part of $100.00 shall be entitled to such fractional vote as said fractional part is a fraction of one hundred. Said

vote shall be cast by the subscribers in person or by written proxy in the stockholders' meeting.''

██ Defendants insist that Code Section 4151 and the quoted charter provisions are inconsistent, and the statute prevails over the charter. That is the rule if the statute and the charter provisions are in conflict. Collier v. Union Railroad Company, 113 Tenn. 96, 83 S. W. 155.

██ We find no conflict between Code Section 4151 and the quoted charter provision. The statute does not declare that each member shall be entitled to only one vote regardless of the number of shares which the member held. If the construction for which defendants contend were given the statute, five members could purchase $100,000 each in shares of the corporation, or a total of $500,000 invested in the corporation; and ten members could purchase $10 each in shares of the corporation, or a total of $100: then in a meeting of the members, the members of the welfare corporation who represented $100 could take over the corporation from the members who represented $500,000 and manage or dissolve or sell the assets of the corporation. A construction which would produce this effect seems altogether unreasonable to this Court. The charter provision will be given effect and each member will be entitled to one vote for each $100 of shares purchased. More or less than $100 of shares purchased shall be voted on the basis of $100 equals one share and one vote.

Defendants insist that a majority of the votes of the members was not necessary to constitute a quorum at a members meeting. They state that there is no such requirement in the statute, the charter, or by by-laws. It is the contention of defendants that Code Section 4151

expressly declares that each member shall have one vote and that in any election the majority of the votes cast, regardless of the number of shares, shall determine the result of the election.

■ The common law rule is that a majority of all members entitled to vote is not necessary unless a statute, charter, or by-law requires it. 18 C. J. S. Corporations sec. 546, p. 1235; 19 C. J. S. Corporations sec. 719, p. 39; 13 Am. Jur. 521.

■ Ordinarily, a quorum means a majority of all entitled to vote. 74 C. J. S. Quorum p. 171.

From the organization of Bedford County Hospital the members had construed the statute and charter to require a majority of all the members entitled to vote to constitute a quorum. Indeed, in the members' meeting called for November 9, 1948, the members agreed that a majority vote of all members entitled to vote was necessary to constitute a quorum on the basis of $100 equals one vote. Because a quorum was not present, using that rule, the meeting of November 9, 1948, was adjourned to November 19, 1948.

■ The intention of the legislature must control in the construction of a statute.

■ We hold that Code Section 4151 should be construed in connection with section 4155, as amended T. C. A. sec. 48-1120, which provides:

"The members may, at any time, voluntarily dissolve the corporation, by a conveyance of its assets and property to the State of Tennessee, any county or municipality of the state, or to any other corporation holding a charter from the state for purposes

not of individual profit, first providing for corporate debts; provided, that assets and property so conveyed shall be used by the grantee for purposes similar to those of the conveying corporation.

"Whenever there has been no meeting of the members for a period of five (5) years or more, and because of the death of members or the condition of the corporate records it is impossible to notify a sufficient number of members to constitute a quorum, notice of a meeting of the members may be made by publication in some newspaper in the county where such corporation has its principal location, at least thirty (30) days before such meeting shall be held. The members attending such meeting shall be deemed to constitute a quorum for the purposes of electing directors or trustees, and authorizing such directors or trustees to dissolve the corporation and convey its property and assets in accordance with this section."

We call special attention to the clause in Code Section 4155 which states if "it is impossible to notify a sufficient number of members to constitute a quorum." Evidently, the legislature thought a majority of all members entitled to vote was necessary to constitute a quorum or there would have been no necessity for amending the statute. We hold a majority of the members entitled to vote were necessary to constitute a quorum at a members' meeting on the basis of $100 equals one vote.

 The evidence clearly shows that there was no quorum at the members' meeting held on November 19, 1948. No effort was made to ascertain whether a quorum was present of members or their representatives legally

entitled to vote at this members' meeting. Some sort of a poll or count was made; but no lawful standard for ascertaining the legal voting shares was used. Mr. Ben Kingree, Jr., and Mr. W. P. Cooper, excellent Attorneys, were present, and testified that no quorum was present on November 19, 1948.

Wherefore, any action which was taken at the members' meeting held on November 19, 1948, was void and of no effect for want of a quorum.

The charter provides that the qualifications for membership on the board of directors shall be "any citizen of Bedford County, twenty-one years of age, and a stockholder, shall be eligible as a director."

Directors who were "elected" in the members' meeting of November 19, 1948, were: J. O. Fly, Sr., J. D. Hutton, Amos Brown, Charlie Rice, and W. P. Cooper. On February 12, 1923, a resolution was passed at a members' meeting that the County Judge of Bedford County and the Mayor of Shelbyville should serve as members of the board of directors.

When the board of directors thus constituted on November 19, 1948, passed the resolution relating to the transfer of real estate from Bedford County Hospital to Bedford County, J. O. Fly, Sr., J. D. Hutton, Charlie Rice, the Mayor of Shelbyville and the County Judge of Bedford County were not members of Bedford County Hospital; and were, therefore, ineligible to serve on the board of directors. The evidence shows without conflict that neither of these gentlemen was a member of the Bedford County Hospital. 13 Am. Jur. 856-858.

(4) Did the members have the authority and power to pass the resolution of November 19, 1948?

They did not because there was no quorum present to transact any business.

(5) Did the board of directors have power and authority to execute and deliver to Bedford County the deed in question acting under the resolution of the members of November 19, 1948?

They did not. They were not legally elected as members of the board of directors of Bedford County Hospital. A majority of that board were not qualified to act as directors of Bedford County Hospital for they were not members of this welfare corporation, a prerequisite to membership on the board.

Furthermore, at the time the resolution of November 19, 1948, was passed, Bedford County was not authorized to accept a deed to the assets of Bedford County Hospital. At that time the total assets of a welfare corporation could only be transferred to another charitable corporation whose purposes were not for individual profit. Of course, Bedford County was not such a welfare corporation.

Chapter 110 at the Public Acts of Tennessee for 1951, T. C. A. sec. 48-1120, authorized such assets of a welfare corporation to be conveyed to the State of Tennessee or any county or any municipality of the State. This 1951 Act was not retroactive and could not be used as authority to authorize the conveyance of any assets of Bedford County Hospital to Bedford County in 1948.

(6) Did the Chancellor commit reversible error when he denied the relief complainants sought under their bill and granted the relief to defendants under the cross bill?

We hold the record clearly sustains the contentions of complainants and their bill should have been sustained; and the cross bill should have been dismissed.

(7) Were complainants estopped to deny that the board of directors of Bedford County Hospital elected November 19, 1948, were de jure officers of the Bedford County Hospital and de facto officers of Bedford County Hospital?

Estoppel is never applied unless the person relying thereon suffers injury because of facts relied on to constitute the estoppel. Moore v. Carter, 38 Tenn. App. 603, 277 S. W. (2d) 427; Hankins v. Waddell, 26 Tenn. App. 71, 167 S. W. (2d) 694; Clarke v. Ripley Savings Bank & Trust Co., 27 Tenn. App. 387, 181 S. W. (2d) 386.

Quite obviously, this rule will defeat defendants' plea of estoppel. Certainly, some of the complainants could in no sense be estopped because they have committed no acts upon which an estoppel could be based. Defendants have not changed their position to their detriment because complainants did certain acts which misled them. Bedford County was paying no consideration for the assets of Bedford County Hospital; and the other defendants, except Mr. Brown, were not even members of Bedford County Hospital.

Complainants make the question that the findings of fact of Judge Smartt should not be considered because these facts were incorporated into a decree which he entered and which Solicitors for cross complainants drafted. There is no merit in this contention. It is true that the Chancellor must find the facts. 1932 Code of Tennessee Section 10620, T. C. A. sec. 27-113.

This statute expressly states that, "in the chancery court the findings may be incorporated in the decree." When Judge Smartt signed the decree and it was entered on the minutes, the findings of fact contained therein became the findings of fact of Judge Smartt regardless of the draftsman of the decree. The record shows that Judge Smartt kept the final decree in his possession several weeks before he actually entered it. Complainants had full opportunity to object to all or any parts of the decree before it was entered. This Court has held that the findings of Judge Smartt were erroneous; but, also, we have held that he certainly had the right and duty to file such findings in the way he did. Gibson's Suits in Chancery, Fifth Edition, Sections 613 and 614.

Although the decision of the question is not necessary in view of our holding therein, we are of opinion that the Board of Directors elected November 19, 1948, exceeded the authority conferred upon the Board by the resolution which was passed by the members on November 19, 1948.

Responding to this contention in the Chancery Court, Chancellor Lee said:

"Did the new board of directors exceed its authority when it executed and put of record the deed conveying the welfare corporation's property to the county? I am of the opinion that it did. This new board of directors refused for more than three years to deed this property to the county without the sanction of the Chancery Court. It never even considered making such a deed until after the site of the new hospital was relocated and after the passage

of the 1951 amendatory act. This board of directors of this welfare corporation were the agents of said corporation; it was the general agent of the corporation insofar as the transacting of the general business of the corporation under its charter and statutory powers; it was the special agent when it came to the conveyance of this property to Bedford County.

"As to the powers of general and special agents, see 2nd Am. Jur. pages 73, 74, and notes.

"It is conceded that it took special action of the members of this welfare corporation to authorize the board of directors to convey its property and dissolve the welfare corporation. The statute makes it plain that the 'members only' of the welfare corporation may dissolve it by a conveyance of its assets, etc. Therefore, in recommending to the new board of directors that it make the deed to its real estate under certain circumstances it thereby designated the new board of directors as its *special agent* to carry into effect its wishes under the restrictions laid down by said members. It has been held in this state that:

" 'If a general agent make a contract within the scope of his agency, the principal is bound by such contract though in violation of instructions, unless the party with whom the contract is made knew that the agent was violating his instructions.' Mt. Olivet Cemetery Company v. Schubert, 39 Tenn. 116.

" 'A special agent,' says Mr. Story, Section 58, 'properly exists where there is a delegated authority

to do a single act; a general agency properly exists when there is a delegation to do all acts connected with a particular trade, business or employment.' [Murphy v. Southern Life Ins. Co.] 62 Tenn. [440] 448; [Co-operative Stores Co. v. United States Fidelity & Guaranty Co.] 137 Tenn. [609] 630 [195 S. W. 177].

"Bedford County knew at the time it accepted the deed that the property was authorized to be conveyed for the express purpose of providing a site for the new hospital. It knew that it was not authorized to be conveyed for any other purpose. It knew at the time of the acceptance of the deed that it could not and would not be used as a site for the new hospital, because another site had been selected and the new hospital constructed thereon. The deed itself recites on its face that it was made in conformity with said resolution, and this recitation in the deed is not true. A portion of the resolution was copied into the deed but the real purpose of the resolution was omitted from the deed. As before stated, these directors acted as special agents in this transaction. At the same time they occupied a fiduciary relation toward the welfare corporation and its members. Shea v. Mabry, 69 Tenn. page 319.

" 'Where one person deals with another, knowing that the other is acting under a delegated authority; if he does not inform himself of the extent of such delegated authority it is his own folly. Such party must interpret the instrument conferring the power at his own peril. In all such cases the principal is bound only to the extent of that authority.' Brown

v. Laird, 134 Or. page 150 [291 P. 352], 73 A. L. R. 877.

"As such special agents it was their duty to follow the spirit as well as the letter of said resolution, and where there was doubt, if this record shows there was, they should not have resolved that doubt against their principal, the welfare corporation. The sole interest of the welfare corporation should have been their guide.

"As above indicated, the 'Burns Resolution' incorporates itself into said deed and when it is read into the deed there are glaring conflicts between the resolution and the recitations in the preamble of the deed. Bedford County is not an innocent purchaser of this property. It had notice of the resolution and the purpose for which it was passed. It had notice of its legal significance. When the directors as special agents went beyond the express terms of the resolution they did not bind their principal, the welfare corporation.

"Since the board of directors as special agent of the welfare corporation exceeded its authority, I am of the opinion that the contract to convey as expressed in the resolution is an executory and not an executed contract; that the performance of this contract depended upon a condition and whether the condition was precedent or subsequent makes no particular difference. The failure to use the site for the construction of the hospital operates to defeat and annul the resolution."

We fully concur in these findings of fact and conclusions of law of Chancellor Lee.

This cause is very simple. An illegally elected board of directors, the majority of whom were not eligible to serve as directors of Bedford County Hospital, attempted to convey all assets of this welfare corporation, without consideration, to Bedford County at a time when Bedford County could not accept such assets. The majority of this board of directors had no legal connection with Bedford County Hospital, not being members. Thus, directors who had no legal interest in the hospital were in effect dissolving it.

When this deed was signed, delivered, and recorded, on September 19, 1952, there was a statute in effect which provided a simple way to dissolve this welfare corporation, even though a majority of the members could not be found. 1932 Code sec. 4155, as amended by Chapter 110 of the Public Acts of Tennessee for 1951. These directors did not follow this simple statutory method of dissolving Bedford County Hospital, but pursued a course which they were advised by reputable attorneys was questionable and purported to act under the resolution of November 19, 1948.

In concluding his opinion in this cause, Chancellor R. E. Lee said:

"Since the passage of this Act (Chapter 110 of the Public Acts of Tennessee for 1951), the only fair thing to do is to call another meeting of the members of the welfare corporation by inserting a notice in the newspaper announcing the time and place of said meeting, as provided by the bylaws of the corporation, and the members of said welfare corporation who attend said meeting should be given an opportunity to determine for themselves, as provided by

the Act of 1951, whether or not they want to give this property to Bedford County to be used in connection with the new hospital or 'for purposes similar to those of the conveying corporation.' By leaving it to the members of the welfare corporation they will be given an opportunity for the first time to dissolve the corporation in the manner provided by law, and this opportunity should not be denied them.

"A decree will be drawn sustaining the original bill as amended; declaring the deed from the Bedford County Hospital to Bedford County a cloud upon the title to its property and declaring the same to be null and void and cancelled of record. The cross bill of the defendant, Bedford County, seeking to recover the personal assets is dismissed. The replevin suit at law brought for the purpose of recovering certain personal assets in the old hospital is perpetually enjoined."

We approve this statement of Chancellor Lee. The decree of the Chancery Court of Bedford County is reversed. Enter a decree in this Court in favor of complainants as stated in the last paragraph of Chancellor Lee's opinion quoted above. Remand to enforce the decree and for such further proceedings in the cause as may seem proper to the Chancellor consistent with this opinion. Tax all costs against the original defendants.

Felts, J., concurs.

Shriver, J., not participating.