## ASSOCIATED PRESS v. WGNS, INCORPORATED.
### —348 S. W. (2d) 507.

Middle Section, at Nashville.    March 3, 1961.

Certiorari Denied by Supreme Court July 26, 1961.

James W. Buckner, Murfreesboro, for plaintiff.

Granville S. R. Bouldin, Murfreesboro, for defendant.

SHRIVER, J. The parties will be referred to as they appeared in the Court below.

## I.

Plaintiff, The Associated Press, brought suit in the Circuit Court of Rutherford County to recover for damages and arrearages resulting from an alleged breach of contract by defendant WGNS.

The case was heard before Honorable John D. Wiseman, Judge of the Circuit Court, without the intervention of a jury and resulted in a dismissal of plaintiff's suit.

## II.

The Associated Press is a non-profit membership corporation organized and existing under the laws of the State of New York and engages in gathering news and making it available to its members for newspaper publication and radio broadcasting.

The defendant WGNS, Inc., is a Tennessee Corporation which owns and operates a radio station at Murfreesboro, Tennessee.

On October 29, 1952, the parties entered into a written contract which obligated plaintiff to furnish teletype news service to the defendant radio station which contract, among other things, provided that plaintiff was to commence its teletype news service to the defendant on January 1, 1953, and for such service the defendant was to pay weekly assessments of $30 during the first year of the contract, $31.50 during the second year, $32.50 during the third year, $33.50 during the fourth year and $35 thereafter until the contract was terminated in accordance with its provisions.

The contract, Exhibit 1 to the testimony of Cecil Elrod, Sr., is a printed form consisting of thirteen sections, but the provision as to the amount of the weekly assessments in section 2 is typewritten, as is the beginning date of the contract and certain other incidental matters.

Section 4 of the contract was amended by adding in typewritten form sections 4a and 4b and it is these sections that form the basis of the dispute in this case.

Section 4 of the printed form, with the beginning date typed in, is as follows;

"The term of this agreement shall commence on the date the news service is made available to the Member, which shall be January 1, 1953, and, unless sooner terminated as herein provided or pursuant to the By-Laws of the Associated Press, it shall continue thereafter until terminated by the Member upon two years' notice, in writing, by registered mail to The Associated Press at New York, of the Member's election to do so.''

Before the contract was executed by the parties the defendant or its attorney or representative drafted and caused to be typewritten at the end of said printed form the two additional provisions, 4a and 4b, which are as follows;

"4a—The provisions of Clause 4 to the contrary notwithstanding, Member broadcaster agrees not to terminate the service described hereunder for five years, except for increased assessment or until January 1, 1958, but it is further understood and agreed that the service described hereunder may be terminated January 1, 1958 without further notice from the Member broadcaster.

"4b—It is further agreed this contract can be automatically terminated without further notice from Member Broadcaster January 1, 1955, but in this event Member broadcaster agrees to pay the equitable assessment $35.00 weekly the last 12 months Member receives service described hereunder.''

The parties commenced performance of this contract on January 1, 1953 and each continued performance according to its terms until January 17, 1959, or more than one year after January 1, 1958.

On January 14, 1959 defendant mailed to plaintiff the following letter;

"The Associated Press
"50 Rockefeller Plaza
"New York 20, New York

"Gentlemen:

"In reference to our contract with you for teletype machine, we notice this has expired, and, we wish, at this time, to cancel as of January 17, 1959.

"We are enclosing check for $327.15, as requested in your letter of December 23, to pay on this and the balance will be paid at an early date.

"Yours very truly,

"/s/

W. G. N. S., Inc."

"CE:KH

From this letter it is seen that defendant took the position that the contract has expired by its own terms and without prior notice although the service was continued and accepted as above outlined.

Plaintiff insisted that defendant had waived its reserved option to terminate the contract on January 1, 1958 by continuing in full performance thereof for more than a year thereafter, and that, having waived said provision or option as contained in section 4a, it was bound by the other or alternate provisions of the contract, particularly section 4, which required two years written notice of termination. Plaintiff therefore called on the defendant to pay its assessment for such service during the remaining period of the contract.

Defendant then insisted that it had a right to terminate the contract without further notice at any time after January 1, 1958, and refused to further perform. It paid its assessments in full through January 17, 1959, but refused to pay any amount thereafter.

In this situation plaintiff continued to perform the contract by delivering news through its teletype to defendant's radio station, which news was at the disposal of the defendant until June 30, 1959, or something more than five months after the defendant's alleged breach. Plaintiff then discontinued said service.

As to damages, the suit of plaintiff is for arrearages of $36.35 per week for service delivered from January 17, 1959 through June 30, 1959, or 23 3/7 weeks amounting to $851.63.

In addition, the plaintiff claims damages of $1,369.71 for the remaining 80 4/7 weeks of the two-year period claimed by it under the contract, which amount is arrived at by giving the defendant credit for $19.35 per week estimated savings after removing the teletype equipment from the defendant's premises, thus leaving a balance of $17 a week from July 1, 1959 through January 14, 1961, or the remainder of the two years after notice as required under section 4.

Thus, plaintiff's suit is for a total of $2,221.34 as arrearages and damages.

### III.

It was stipulated by the parties that the only issues in controversy in this case are as follows;

"1.. Was the defendant's notice, dated January 14, 1959, of its intention to terminate the contract (Exhibit A to the Declaration) as of January 17, 1959, and its actual termination on said latter date, authorized by and permissible under section 4a and 4b of the contract, or did same constitute a breach of section 4 of the contract?

"2. If the contract was breached by the defendant, to what damages and/or other arrearages, if any, is the plaintiff entitled?"

The trial Judge after hearing the evidence and arguments of counsel filed a memorandum opinion which is made a part of the record. In said opinion, after reviewing portions of the evidence and certain pertinent sections of the contract, the Court concluded, in part as follows;

"* * * The Associated Press (insists) that the contract could not be terminated except by giving two years' notice as provided for under Section 4 of the contract. WGNS insists that it had the right to thus terminate the contract after the lapse of five years. This is the issue to be settled in this suit. * * *

"Now the plaintiff insists that, since the defendant did not exercise its right to terminate the contract on January 1, 1958, the contract could not be terminated after that date without giving the two years' notice. Strictly construing the printed contract as modified by typewritten insertions, there is plausible argument to sustain this insistence. But taking into consideration all the ramifications of the negotiations, the objects and ends to be attained by both parties, it seems to me that the logical conclusion is

that the defendant had the right to terminate the contract without the two years' notice after it had been complied with for a period of five years. The plaintiff suffered no loss but profited by the contract being complied with for a period of five years; and not only that but an increased assessment was paid by the defendant before the contract was terminated. * * *,,

## IV.

### Assignments of Error

Plaintiff below, The Associated Press, perfected its appeal and has filed five assignments of error.

It will not be necessary to consider each assignment separately. In the aggregate they simply complain of the interpretation given the contract by the trial Judge and assert that it was error for the Court to fail and refuse to enforce the clear and unambiguous provisions of section 4 of the contract by requiring the defendant to give two years written notice of its intention to terminate, and that the Court was in error in admitting the oral testimony of witnesses Cecil Elrod, Sr. and Cecil Elrod, Jr. as to the intention of the parties at the time they signed the contract.

## V.

It is the defendant's position that it was the intention of the parties that defendant would bind itself for only five years and that, thereafter, the contract might be terminated at any time. In other words, it might be terminated on or after January 1, 1958 without further notice from the defendant. The trial Court seems to

have been impressed with the oral evidence offered by the defendant to this effect.

It is not disputed that sections 4a and 4b were written by or on behalf of the defendant whose purpose was to take advantage of the offer made by the plaintiff to give a somewhat cheaper weekly rate of assessment for taking the service a minimum of five years.

As seen hereinabove, at the expiration of the five-year term on January 1, 1958, defendant did not elect to terminate the contract but went on accepting service and paying for same for more than a year thereafter.

It is to be noted that on December 18, 1957, while the defendant's weekly assessment was $35, plaintiff gave the defendant notice that pursuant to a general increase of the assessments the defendant's weekly assessment would be increased by $1.35 to become effective March 2, 1958. After this date defendant commenced to pay its increased assessment of $36.35 a week and continued to make said payments until January 17, 1959. Thus, the defendant not only failed to exercise its option to terminate the contract under the provisions of 4a on January 1, 1958, but it also waived the provisions of section 2 of the printed contract which is as follows;

"In the event that the assessment payable hereunder shall be increased during the term hereof, the Member shall have the right at any time within sixty (60) days after the date upon which notice of such increased assessment is given by The Associated Press, to terminate this agreement upon thirty (30) days notice, in writing, by registered mail to The Associated Press at New York, of the Member's election to do so."

It is to be noted also that, although the defendant caused sections 4a and 4b to be inserted in the contract, thus modifying the provisions of section 4 to the extent of said amendments, section 4 was left otherwise undisturbed in the contract.

Counsel for plaintiff makes this pertinent inquiry, "If the defendant was bound for five years, irrespective of the two year notice provision, and if defendant could then terminate at will after the five year period, why was the two year notice provision left whole and complete in the contract?" Counsel then makes the following observation, "The fact that the two year notice provision was left in the contract admits of but one logical conclusion * * * the provision was to become applicable from the time defendant might choose to waive his option to terminate without further notice. This contingency occurred when defendant voluntarily chose not to terminate at the expiration of the five year period January 1, 1958.

"The plaintiff accepted the modifications as defendant had written them. The Honorable trial Court has held plaintiff responsible for a revision of that language which plaintiff never accepted."

Some comment was made by the trial Court and by counsel for the parties respecting provision No. 14 in the contract which was typed in but which was cancelled by drawing a line through same with pen and ink.

We feel that no particular significance can be given to this provision which was stricken out. It simply indicates that in the negotiations of the parties someone drew provision No. 14 which the parties did not agree on and which was, therefore, stricken out.

■ As has been held by our Courts, it must be assumed that the language of a contract signed by the parties was that of all the parties thereto and was purposely used by them as giving expression to their intentions. See Bailey & Co. v. Union Planters Title Guaranty Co., 33 Tenn. App. 439, 232 S. W. (2d) 309 and Home Beneficial Assn. v. White, 180 Tenn. 585, 177 S. W. (2d) 545.

■ It is a rule too well recognized to require citation of authority that if the language of a contract is plain and unambiguous it is the duty of the Court to interpret and enforce it as it is written. See Petty v. Sloan, 197 Tenn. 630, 277 S. W. (2d) 355 and Smithart v. John Hancock Mut. Life Ins. Co., 167 Tenn. 513, 71 S. W. (2d) 1059.

■ While it is a cardinal rule in the interpretation of contracts that the Courts seek to ascertain the intention of the parties and to give effect to that intention, the Courts do not try to determine the state of mind of the parties when the contract was executed but, rather, what their intention was as embodied and expressed in the instrument as written. Petty v. Sloan, supra, and Home Benefit Assn. v. White, 180 Tenn. 585, 177 S. W. (2d) 545.

■ If disputed language in a contract is ambiguous, uncertain, and unclear so as to require judicial construction, it will be construed most strongly against the author of it. Marron v. Scarbrough, 44 Tenn. App. 414, 314 S. W. (2d) 165; Anderson v. Davis, 34 Tenn. App. 116, 234 S. W. (2d) 368.

■ We have been unable to escape the conclusion that, after section 4a of the contract became ineffective by its own terms, the parties, thereafter, continued to operate for more than a year under the general provisions of the

contract which they had signed and that the provisions of section 4 were effective to bind them. Therefore, the defendant having waived its option to terminate the contract under section 4a, was bound by the provisions of section 4.

■ It is the universal rule that a contract must be viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illuminate another.

As is said in 6 R. C. L. page 838 under the title "Contracts",

"Taking its words in their ordinary and usual meaning, no substantive clause must be allowed to perish by construction, unless insurmountable obstacles stand in the way of any other course. Seeming contradictions must be harmonized if that course is reasonably possible. Each of its provisions must be considered in connection with the others, and, if possible, effect must be given to all. A construction which entirely neutralizes one provision should not be adopted if the contract is susceptible of another which gives effect to all of its provisions. The courts will look to the entire instrument, and, if possible, give such construction that each clause shall have some effect, and perform some office."

It results that the assignments of error with respect to the interpretation given the contract by the trial Judge are sustained and a judgment will be entered here in behalf of plaintiff for $2,221.34 and the costs of the cause.

Reversed and rendered.

Hickerson and Humphreys, JJ., concur.