## FRANK R. ENGERT et al. v. PEERLESS INSURANCE COMPANY et al.—382 S.W.(2d) 541.

Eastern Section. March 26, 1964.

Certiorari Denied by Supreme Court August 26, 1964.

312

Ladd & Qualls, Harriman, for Wayne W. Christmas and J. D. Christmas.

Yancey, Butler, Babb & Kidwell, Knoxville, for Peerless Ins. Co.

Ambrose, Wilson & Saulpaw, Knoxville, for H. T. Kern, Trustee in Bankruptcy.

Hugh Tapp, W. P. O'Neil, Joel H. Anderson, Jr., and Robert Leonard, Knoxville, for Frank R. Engert et al.

Earl S. Ailor, Knoxville, for Knox County Board of Education and its individual members.

COOPER, J. This suit was brought by several subcontractors seeking a declaration of their rights to payment by the surety on a general contractor's performance bond for materials and labor furnished in the construction of additions to three public schools in Knox County, Tennessee. The complainants also sought an adjudication of the amounts due on their claims and a judgment against the parties liable for payment. The named defendants were Wayne W. Christmas, the general contractor, Peerless Insurance Company, surety on the performance bond, J. D. Christmas, who allegedly agreed to indemnify the surety on the performance bond, and the seven members of the Knox County Board of Education, who awarded the contract for the construction of the school additions.

After hearing the cause on deposition, the Chancellor found that the bonds in question were statutory bonds guaranteeing payment to material and labor furnishers, and awarded judgments against Wayne W. Christmas, the general contractor, and the Peerless Insurance Company, surety, to those material and labor furnishers who

had given proper notice of their claims, and had filed their suits within the prescribed time. The Chancellor further decreed that the funds due the general contractor for work performed under his contract with the Board of Education, and which had been paid into the registry of the Court, would be credited against the judgments, and awarded the Peerless Insurance Company a judgment over against Wayne W. Christmas and J. D. Christmas, as indemnitors, for the balance due the material and labor furnishers. Claims against the Board of Education and its individual members were dismissed.

Appeals were perfected by Wayne W. Christmas, J. D. Christmas, Peerless Insurance Company, and H. T. Kern, Trustee in Bankruptcy for the Knoxville Roofing Company, a material and labor furnisher whose claim was denied.

Before discussing the merits of the cause, we must dispose of the assignments of error of the defendants, Wayne Christmas and J. D. Christmas, which question the propriety of the Chancellor's action in overruling their demurrers to the original bill, and their motion to dismiss Peerless Insurance Company's answer in the nature of a cross bill, in which it sought a judgment over against the defendants Christmas under the indemnification agreements executed by them. The defendants Christmas insist that the original bill did not state a cause of action against either of them, that it showed on its face that the defendants Christmas were residents of Roane County rather than Knox County where the suit was brought, and that the answer in the nature of a cross bill was an entirely new and different cause of action and had to be brought in the county of the defendants' residence.

The original bill in this cause was filed under the Tennessee Declaratory Judgments Act (T.C.A. sec. 23-1101 et seq.), which provides that any person interested under a written contract or other writings constituting a contract, may have a determination and declaration of their rights, status and legal relations. T.C.A. sec. 23-1107 provides, in part, that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, * * *."

In the original bill, complainants alleged that each had furnished labor and materials to the defendant, Wayne W. Christmas, for the improvement of the public school buildings involved in this litigation and had not been paid. Complainants further alleged that bonds had been executed by the defendant Peerless Insurance Company, as surety, guaranteeing the performance of the public improvement contract between Wayne W. Christmas and the Knox County Board of Education, and that the defendant J. D. Christmas had, in turn, executed an agreement indemnifying Peerless from loss; that the surety had denied payment of complainants' claims, contending that the bonds in question merely guaranteed the completion of the construction of the building, and not payment to sub-contractors. Complainants then asked for a declaration of their rights, if any, to payment under the bonds.

■ From these allegations, it is apparent that Wayne Christmas, as principal on the bonds, and J. D. Christmas, as indemnitor of the surety on the bonds, both have a substantial interest in any declaration of liability under the bonds, and, consequently, both are proper parties to a declaratory judgment action.

■ It is equally apparent that the present suit was properly brought in Knox County. T.C.A. sec. 16-624 provides that "[t]he court of chancery acts ordinarily in personam, and suit may be instituted wherever the defendant, or any material defendant, is found, unless otherwise prescribed by law." Where other defendants are not to be found in the county in which suit is properly brought, counterpart summons may be issued to any other counties of the state. T.C.A. sec. 16-625. Peerless Insurance Company, as surety on the bonds which were the subject of this action, was a material defendant and was found in Knox County, giving the complainants the right to bring the suit in Knox County and to secure valid service on the defendants Christmas by counterpart summons.

■ As to the insistence of the defendants Christmas that the Chancellor erred in failing to dismiss the answer in the nature of a cross-bill filed by the defendant Peerless Insurance Company, it should be noted that the issues created by the answer resulted from the same transaction which gave rise to the original suit in this cause. Once Peerless was made a party to this proceeding by the original bill, the logical course to take was to establish its rights and position concerning the other parties, and particularly concerning the defendants Christmas.

"It is a fundamental rule of Equity jurisprudence, that the Court of Chancery, in any cause coming before it for decision, if the circumstances of the case permit, and all the parties in interest are or can be brought before it, will determine the entire controversy, and award full and final relief; and thus do complete justice to all the litigants, whatever may be the amount or

nature of their interest or liability and thus to bring all possible litigation over the subject matter within the compass of one judicial determination." Gibson's Suits in Chancery (5th Ed.) Sec. 45, p. 57.

"Furthermore, the declaratory judgment law must be liberally construed to effect its purpose, that is, to finally decree the rights of the parties and give them the relief to which they are entitled. T.C.A. 23-1113." Bedford County Hospital v. County of Bedford, 42 Tenn.App. 569, 304 S.W.(2d) 697.

In view of the basic principle of equity jurisprudence set out above, and the broad purpose of the Declaratory Judgments Act, we think the Chancellor acted properly in refusing to strike Peerless's answer in the nature of a cross-bill.

Turning now to the merits of the case, we find that the record discloses that the Knox County Board of Education advertised for bids for construction of additions to the Bonny Kate, Gap Creek and White Schools in Knox County, Tennessee. The "Legal Notice to Bidders" advised that contract documents could be inspected at the office of the Board of Education, and that copies could be obtained by contractors wishing to make bids. Article 30 of the "General Conditions", which were a part of the contract documents, provided:

"The Owner shall have the right, prior to the signing of the Contract, to require the Contractor to furnish bond covering the faithful performance of the Contract and the payment of all obligations arising thereunder, in such form as the Owner may prescribe and with sureties as he may approve * * *."

The "Legal Notice to Bidders" further advised all

bidders that their bids must be accompanied by a bid bond of not less than five (5%) per cent of the base bid, executed by the bidder and a surety company licensed to do business in the State of Tennessee.

The defendant Wayne Christmas bid for these public works, and furnished to the Board of Education, as a bid bond, an agreement entitled "Indemnity Agreement for all Kinds of Bonds". This agreement was executed by Wayne Christmas and J. D. Christmas, and had attached thereto a certified copy of the appointment of James P. Carroll, as attorney-in-fact, to execute certain types of bonds in behalf of Peerless. The agreement provided, among other things, that:

"At the request of the undersigned, * * *, and upon condition that this instrument be executed, the PEERLESS CASUALTY COMPANY (same as Peerless Insurance Company), * * * has become, now is, or may in the future become surety for the principal on certain bonds on behalf of Wayne Christmas, d/b/a Christmas Lbr. & Supply Co., Harriman, Tenn. hereinafter referred to as principal, and in favor of Knox County Board of Education, Knoxville, Tennessee.

"White School, 5% Bid, $56,075.00; Bonny Kate School, 5% Bid, $18,544.45; Gap Creek School, 5% Bid, $27,961.67. Bonds will be issued separately if awarded."

Wayne Christmas was low bidder, and was awarded the contract for the construction of the three school additions for a total consideration of $103,256.12. The written contract between Wayne Christmas and the Board of Education consisted of the "Standard Form of Agreement between Contractor and Owner for Construc-

tion of Buildings'' as prepared by the American Institute of Architects, the ''General Conditions of the Contract for the Construction of Buildings'' (A.I.A. Form A2), and the specifications and drawings prepared by David Liberman, A.I.A., Knoxville, Tennessee.

The contract, in addition to giving the owner the right to require bond insuring the faithful performance of the contract and the payment of all obligations thereunder (Article 30 set out above), expressly provided that:

''The contractor shall provide and pay for all materials, labor, water, tools, equipment, light, power, transportation, and other facilities necessary for the execution and completion of the work; * * *.'' (Article 9 of the General Conditions)

and (Article 5 of the Agreement)

''Before issuance of final certificate [which was necessary before payment of the retainage under the contract] the Contractor shall submit evidence satisfactory to the Architect that all payrolls, material bills, and other indebtedness connected with the work have been paid.''

In awarding the contract, it was understood that work on the school additions would not begin until Christmas had supplied the necessary bond to insure the faithful performance of the contract. However, Christmas was permitted to begin construction before delivery of the bonds upon the representation of Mr. Carroll, the agent of Peerless Insurance Company, that the bonds had been approved by the Company's Home Office, and would be delivered shortly. It was understood by the parties that no payments would be made to Wayne Christmas under

the contract until the bonds actually had been delivered to the Architect.

The "Performance Bonds" were delivered to the Architect on July 31, 1957, some six weeks after construction had begun on the school additions.

The bonds made the contract between the Board of Education and Wayne Christmas a part of the bond by reference, and provided, as follows:

"Now, therefore, the condition of this obligation is such that if the contractor shall promptly and faithfully perform said contract, then this obligation shall be null and void; otherwise it shall remain in full force and effect."

"Whenever Contractor shall be, and declared by Owner to be in default under the Contract, * * * the Surety may promptly remedy the default, or shall promptly

"(1) Complete the Contract in accordance with its terms and conditions, or

"(2) Obtain a bid or bids for submission to Owner for completing the Contract in accordance with its terms and conditions, and * * * arrange for a contract between such bidder, and Owner and make available as work progresses * * * sufficient funds to pay the cost of completion less the balance of the contract price, but not exceeding, including other costs and damages for which the surety may be liable hereunder, the amount set forth in the first paragraph hereof * * *."

"Any suit under this bond must be instituted before the expiration of two (2) years from the date on which final payment under the Contract falls due.

"No right of action shall accrue on this bond to or for the use of any person or corporation other than the Owner named herein or the heirs, executors, administrators of owner."

As construction of the school additions progressed, the Board of Education made periodic payments to Christmas in compliance with the terms of the contract. Christmas, however, did not pay all his material and labor furnishers, and they so notified the Board of Education and the defendant Peerless Insurance Company, as surety on the bonds.

When payment of the delinquent accounts was not forthcoming, the present suit was filed. The Board of Education intervened, made all material and labor furnishers parties, paid the balance due under the construction contract into Court, and sought to have the Court construe the bonds and to specifically order the surety company to pay all unpaid material and furnishers' bills, with the result set out above.

While the suit was pending, and after the funds had been paid into Court by the Board of Education, Wayne Christmas assigned $5500.00 of the funds due from the Board to his brother, the defendant J. D. Christmas, and $7500.00 to his attorney of record. The Chancellor was of the opinion that Wayne Christmas, being insolvent, "was unable to legally assign any rights to this fund so as to deprive his creditors of such amounts as may be due them", and refused to honor the assignments "except as to any surplus, if any, which may remain after the application of the funds in Court to the claims properly filed and allowed." The defendants Christmas assign the action of the Chancellor as error.

"All of a debtor's property, real and personal, excepting such as is specially exempted by statute, is, in the eye of the law, a fund for the benefit of his creditors. This fund he is not allowed to give away to the injury of those to whom he is indebted * * * Neither does the law allow a debtor to hinder, delay, or defraud his creditors by making conveyances, or suffering judgments, or by putting his property out of their reach, or by covering it up, by sham deeds or other colorable transactions, or by resorting to any other device." Gibson's Suits in Chancery, 5th Edition, Sec. 1056, p. 326.

In the present case, we think the fact that the assignments in question were to Wayne Christmas's brother and to his attorney, and were made at a time when Wayne Christmas was admittedly insolvent, was engaged in litigation over the assigned funds, and the funds had been paid into the registry of the Chancery Court to insure their equitable and proper distribution, fully justifies a finding that the assignments were without consideration and were for the purpose of defeating Wayne Christmas's creditors. We concur, therefore, in the Chancellor's action relative to the assignments.

Defendants Wayne Christmas, J. D. Christmas and the Peerless Insurance Company have filed several assignments of error directed to the Chancellor's finding that the bonds in question were statutory bonds, and were for the protection of the materialmen and furnishers, as well as for the Board of Education, and provided for payment of their accounts in the event the general contractor breached his contract with the Board of Education.

It is a well-recognized principle of contract construction that the intention of the parties as ascertained

from the entire context of their agreement is controlling. And where an executed agreement refers to other documents and makes their conditions part of the executed agreement, the documents must be interpreted together as the agreement of the parties. Real Estate Management v. Giles, 41 Tenn.App. 347, 293 S.W.(2d) 596; Scott v. McReynolds, 36 Tenn.App. 289, 255 S.W.(2d) 401; Gibbs v Trinity Universal Ins. Co., Okl., 330 P.(2d) 1035; 9 Am.Jur., Building and Construction Contracts, Sec. 96, p. 62; 11 C.J.S. Bonds sec. 43, P. 423, and cases there cited.

As stated in City of Bristol v. Bostwick, 139 Tenn. 304, 313, 202 S.W. 61, 63:

"[I]t is the duty of the court primarily to construe every contract to effectuate the intention of those contracting. This will be done even though it be necessary to ignore certain apparently inconsistent language contained in the instrument."

In the case of Commerce Street Co., Inc. v. Goodyear Tire & Rubber Co., Inc., et al, 31 Tenn.App. 314, 215 S.W.(2d) 4, this Court pointed out that:

"It is the duty of the court in the construction of contracts to ascertain the intention of the contracting parties, understand what they meant by the contract, and give effect to such understanding and meaning. All other rules of construction are only aids or helps in establishing the intention of the parties and their mutual understanding of the meaning of their contract.

"The motives which induced the contract have a definite bearing upon the intention of the parties. The object and purpose to be effected furnish valuable aids in ascertaining such intention.

and quoted with approval 12 Am.Jur., Contracts, Section 247, page 784, as follows:

"In the interpretation of an agreement, the surrounding circumstances at the time it was made should be considered for the purpose of ascertaining its meaning, * * *."

See also 9 Am.Jur., Building and Construction Contracts, Section 96, p. 62, wherein it is stated:

"It is frequently stated by the courts that the intention of the parties to a contractor's bond is the controlling factor in determining the right of laborers and materialmen to recover on the bond. This intention is determined by the terms of the bond and the contract in connection with which it is executed. Or, as it is sometimes stated, this intention must be gathered by reading the instruments in the light of the circumstances under which they are executed. The motive, or rather the probable motive, of the obligee may throw light upon the question whether, in a case where the meaning of the language employed is doubtful, the parties intended the undertaking to have such effect as would necessarily benefit the third parties; * * *."

In Algonite Stone Mfg. Co. v. Fidelity & Deposit Co. of Maryland, 100 Kan. 28, 163 P. 1076, L.R.A.1917D, 722, the Supreme Court of Kansas held:

"A surety bond to guarantee the faithful performance of a contract for the erection of a building, which by reference makes the contract and specifications a part of the bond, the specifications requiring the contractor upon final settlement to furnish satisfactory evidence that all persons who performed labor or furnished materials under the contract have been fully paid,

otherwise reserving to the owner the right to retain final payment 'until all liabilities are fully discharged by paying them from such money,' is held to have been intended for the benefit of laborers and materialmen under the contract; and therefore they may maintain a suit on the bond to enforce their claims without having filed mechanics' liens''

In Gibbs v. Trinity Universal Insurance Company, Okl., 330 P.(2d) 1035, a subcontractor brought suit against the owner, contractor, and contractor's surety for the balance due on the subcontract. The Supreme Court of Oklahoma, in reversing the trial court, held that where the construction contract bound the contractor to pay to subcontractors any amount due to them, and the performance bond referred to the contract, it was the evident intent of the parties that the bond was for the benefit and protection of any subcontractor, and the subcontractor could recover thereon. In doing so, the Court stated:

'' 'Where suit is filed upon a bond executed and conditioned for the faithful performance of a contract, such contract and bond may be considered together to ascertain the intent of the parties, and separate paragraphs or isolated clauses therein cannot be construed as controlling, when violative of the intent of the written contract, considered in its entirety.' ''

\* \* \* \* \* \*

''The contract in this case binds the contractor to pay to the subcontractor the amount due and payable under his contract. As above pointed out the contract and bond must be construed together in arriving at the intent of the parties. In so construing these instruments the bond must be read as being conditioned upon the

payment of the amount due and the subcontractor under his contract, and being so conditioned we think it quite clear that the bond was made for the benefit and protection of the subcontractor, plaintiff herein, and that he may maintain an action against the surety on the performance bond to recover the balance due on his subcontract.''

See also, City of Bristol v. Bostwick, 139 Tenn. 304, 202 S.W. 61; Bristol Steel & Iron Works, Inc. v. Plank, 163 Va. 819, 178 S.E. 58, 118 A.L.R. 50; Southwestern Portland Cement Co. v. Williams, 32 N.M. 68, 251 P. 380, 49 A.L.R. 525; Fidelity & Deposit Co. of Baltimore, Maryland v. Rainer, 220 Ala. 262, 125 So. 55, 77 A.L.R. 13.

In the present case, the Knox County Board of Education in letting the contract for the construction of the school additions was under a statutory duty to require the contractor to execute ''a good and solvent bond to the effect that he will pay for all the labor and materials used by said contractor, or any immediate or remote subcontractor under him.'' T.C.A. sec. 12-417. In furtherance of this duty, the Board of Education required Wayne Christmas, the general contractor, to specifically obligate himself to pay for all labor and materials used in constructing the school additions, and required that he supply a surety bond conditioned upon the full performance of the contract. The defendant Peerless Insurance Company issued the bonds and, by reference, made the construction contract between the Board of Education and Wayne Christmas a part of the bonds, without limitation as to extent or purpose. As pointed out above, the bonds provided that if the contractor failed to promptly and faithfully perform any part of his con-

tract—which includes the requirement that the contractor pay for all labor and materials—then the bonds shall remain in force and the surety, Peerless Insurance Company, shall complete the contract in accordance with its terms and conditions. This, according to the below quoted testimony of Mr. Thomas Boswell, a representative of the Peerless Insurance Company, was a way to alter the "Performance Bond" into a "Public Works Bond."

"A. * * * There is one other thing that could have been done to this bond and if the contract had been so drawn, as this bond, very simply could have made specific reference to the contract if that contract had specifications for payment involved in the same." (Tr. 412)

█ Looking at the contract in its entirety, the purpose of the agreement, and the circumstances surrounding its execution, as we must do under the authorities set out above, we have concluded, as did the Chancellor that the parties intended the bonds in question to guarantee payment for all materials and labor used in the construction of the school additions, as well as guarantee the physical completion of the buildings, and that material and labor furnishers could recover the balance due on their subcontracts against the surety on the bonds, provided they had complied with the statutory requirements of notice and had filed their claim within the prescribed time. (T.C.A. secs. 12-421 and 12-422).

The record reveals that the Chancellor referred this cause to the Master to determine which material and labor furnishers had complied with the requisite statutory requirements, and limited the Master to a consider-

ation of the evidence then in the record—expressly refusing to reopen the case for the taking of additional proof.

The Master reported that of the 19 claims filed, only Frank R. Engert, d/b/a Engert Plumbing & Heating Co., William S. Trimble Company, Inc., L. P. Self and J. G. McCullough, partners, d/b/a Knoxville Electric Company, A. G. Heins Company, Inc., and the Witt Building Materials Company, Inc., had perfected and proven their claims. Exceptions were filed to the Master's report, and were overruled by the Chancellor.

Defendants Christmas insist that the Chancellor's action in affirming the Master's report was error, contending that the "notices of claim" given the Knox County Board of Education by the successful claimants were ineffective as they did not segregate materials and labor furnished to each particular school addition.

This contention is, in our opinion, without merit, for it fails to take into consideration the salient fact that the materials and labor for the school additions were furnished under one public works contract—not three separate contracts. The statute, T.C.A. sec. 12-421, requires only that the notice of claim set forth:

"the nature, and itemized account of the material furnished or labor done, and balance due therefor; and a description of the property improved; * * *."

under the "Public Works Contract" giving rise to the claim. There is no requirement that the claimants itemize and separate materials that were used in each of several improvements that might be constructed under one contract, and we do not feel inclined to add such a requirement.

■ Defendants Christmas also contend, with respect to the claim of the Witt Building Material Company, Inc., that it was not filed within the statutory six month period of limitation. T.C.A. sec. 12-422.

The Chancellor found, and the parties are in agreement, that work on the school additions was substantially completed on March 13, 1958, and that suit would have to be brought or claims be filed not later than September 13, 1958, or they would be barred by the statute of limitations.

The record reveals that the original petition was filed in this cause on August 13, 1958. Witt Building Materials Company, Inc., filed its motion seeking to be allowed to intervene on August 30, 1958, pointing out that "its interests in the cause [were] exactly the same as the complainants therein named, and any decision on the matters therein alleged [would] * * * determine its right of recovery against the named defendants therein." The Chancellor sustained Witt's motion by order entered on September 20, 1958. Process was issued immediately and was served on the Knox County defendants on the same date. Service was had on the defendants Christmas in nearby Roane County on September 23, 1958.

The defendants Christmas take the position that Witt's claim was not filed until its petition was entered on record on September 20, 1958. We do not agree.

As a general rule, no person can be heard in reference to a suit unless he is a party. However, in those situations where a stranger to a suit has an interest in the subject matter and needs to be a party, he can move to be allowed to intervene, as did Witt in the present case, and can become a party by order of the Chancellor.

Gibson's Suits in Chancery, 5th Edition, Sections 527 and 809. In those cases, in our opinion, the time of the intervenors entry in the suit dates from the filing of the requisite motion to intervene; otherwise, the intervenor would be subject to having his claim defeated by numerous time factors over which he has no control, viz., "a hearing date in open court dependent upon the condition of the docket when the motion is filed, the possibility of counsel requesting time for the filing of briefs, the inability of the Court to study the briefs at the exact moment of their delivery, and a number of other factors which are obvious to those accustomed to processing motions." Jack, Admstrx., et al. v. Travelers Insurance Company, D.C., 22 F.R.D. 318, 319.

Defendants Christmas and the Peerless Insurance Company next take issue with the Chancellor's action

(1) in awarding the successful claimants interest on their claims from the date they filed suit, and

(2) in adjudging all costs against the defendant Wayne Christmas and Peerless Insurance Company.

In this State, both the awarding of interest and the adjudging of costs rests in the sound discretion of the Chancellor, and his action on these issues will not be disturbed by the appellate courts unless the record discloses a manifest and palpable abuse of discretion. Oman Construction Company v. City of Nashville, 49 Tenn. App. 171, 353 S.W.(2d) 97, 101; Young v. Jones, 36 Tenn.App. 333, 255 S.W.(2d) 703; Branstetter v. Poynter, 32 Tenn.App. 189, 222 S.W.(2d) 214.

We find no palpable or manifest abuse of discretion in the present case.

■ Defendants Christmas also insist that the Chancellor erred in holding that they were liable to Peerless Insurance Company, under a contract of indemnity, for the losses it incurred as the result of Wayne Christmas failing to properly perform his contract with the Board of Education, contending (1) that there was no consideration for the indemnity agreements, (2) that they signed the agreements, and applications therefor, without reading them or understanding their contents and in reliance upon the representations made by Peerless's agent; and (3) that Peerless Insurance Company is estopped both judicially and in fact to assert any claim against the Christmas defendants.

Without going into great detail, the record clearly discloses that the consideration for the execution of the indemnity agreements was the issuance of the bonds, which are the subject of this suit. Both Christmases signed the applications for these bonds and, in doing so, they expressly agreed that if the bonds were issued, they would

> "At all times, indemnify and keep indemnified the Company from and against any and all claims, demands, losses, damages, costs, charges, counsel fees, expenses, suits, orders, judgments, and adjudications whatsoever, that the Company shall or may for any cause at any time sustain or incur by reason of or in consequence of the said bonds * * *."

As to the other contentions of the defendants, the Chancellor found, and we agree, that:

> "The defendants Christmas have not carried the burden of proof to establish that such indemnity agreements as they executed were signed through mistake

or inadvertence or with any oral understanding that they would not be binding. * * * The intention of the defendants Christmas is readily observed from the letter introduced as Exhibit 77 to the deposition of Yancey, wherein the letter states this:

" 'Re: J. D. Christmas. * * * It is Mr. Christmas's position that it was the intention of all parties that he save your good company harmless from any loss which it might be required to pay under the bond.' "

"It is true that the Surety Company, along with the defendants Christmas, have insisted that the bonds are Performance Bonds only but having failed in establishing that, does not result in impairing the effect of the indemnity agreements."

H. T. Kern, as Trustee in Bankruptcy for the Knoxville Roofing Company, also perfected an appeal in this cause insisting that the Chancellor erred in affirming the Master's finding that the Knoxville Roofing Company had not proven its claim, and in denying Kern's Petition to Rehear seeking to reopen the cause for the introduction of additional testimony relative to the giving of "notice of claim".

The record discloses that the Knoxville Roofing Company brought suit against the Peerless Insurance Company, et al, Docket No. 39533 in the Chancery Court of Knox County, seeking to recover on the bonds in question for material and labor furnished in the construction of the school additions. Kern, as Trustee, joined with the original complainants in the present suit, the Knoxville Board of Education and others, and moved to have its case consolidated with the present case. The motion was denied, and the Chancellor ordered Kern, as Trustee, and

all other claimants, not already parties in the present cause, be served with process. Kern, as Trustee, filed a pleading on November 18, 1960 setting forth the facts on which the Knoxville Roofing Company's claim was based, and stating that he was entitled, as Trustee, to share in the funds tendered into court by the Knox County Board of Education, and to recover any unpaid balance from the defendants, Peerless Insurance Company, Wayne W. Christmas and J. D. Christmas.

After proof of all parties, including Kern, as Trustee, was taken according to the rules of Chancellor, the Chancellor, as heretofore stated, referred the cause to the Master to determine which claimants had perfected and proven their claims, and, in doing so, limited the Master to a consideration of the "proof on file".

The Master reported on January 17, 1963 that Kern, as Trustee for the Knoxville Electric Company, had filed his claim in this cause, but had not given the notice of claim within 90 days from March 13, 1958 (the date work on the school additions was substantially completed) as required by T.C.A. sec. 12-421. Exceptions were taken to the master's report by Kern, as Trustee, and were overruled by the Chancellor. The Chancellor also overruled the Petition to Rehear filed by Kern. This appeal resulted.

On appeal, Kern does not cite us to any evidence in the record tending to prove that the requisite "notice of claim" was given by the Knoxville Electric Company to the Knox County Board of Education or to the Knox County Judge, but urges that the filing of the original bill in Knoxville Electric Co. v. Peerless Insurance Company, et al, #39533, on June 30, 1958, wherein it was

alleged that notice of claim was given on April 24, 1958, requires a finding by the Master that the statutory requirements of notice and suit had been met.

■ We cannot agree. *"Lis Pendens* is notice of everything averred in the pleadings pertinent to the issue * * *"*, but is not proof of the facts alleged. See Gibson's Suits in Chancery, Section 75, p. 95.

As to the insistence that the filing of the original bill itself was notice of claim, it is sufficient to point out that suit was not filed until June 30, 1958—107 days after work on the school additions was substantially completed. Notice of claim to be effective must be given "within ninety (90) days after the completion of such public work, * * *." T.C.A. sec. 12-421.

■ Kern also contends in his brief that evidence was available to prove that proper notice of claim was given, and that the Chancellor abused his discretion by refusing to grant Kern's Petition to Rehear and re-open the case for the taking of proof on this issue.

We find no merit in this contention. The record discloses that the present suit was filed on August 13, 1958. Kern, as Trustee, was made a party on September 27, 1960, and filed his response on November 18, 1960. Proof was taken by Kern, as Trustee, on December 21, 1960, and was filed with the Court on January 17, 1961, more than 23 months before the Chancellor's order of reference to the Master in which the Chancellor limited the Master's consideration to the proof then of record. This observation of the time-lapse is not made in criticism of counsel for any party, for the record shows that all parties presented the case in a forceful and energetic manner. The time-lapse is referred to in order to show

that all parties had *ample* time in which to introduce evidence to prove the statutory requisites to recovery of their claims, and to emphasize that the Chancellor did not abuse his discretion in finally terminating the time in which evidence could be presented.

For the reasons above stated, we have concluded that the Chancellor's decree in this cause is without error, and it is, therefore, affirmed in all respects. Costs incident to the appeal are adjudged against the defendants, Peerless Insurance Company, Wayne W. Christmas, and J. D. Christmas, and their sureties.

McAmis, P. J., and Parrott, J., concur.